UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAKE NAMJIK CHO | No. 2:23-mj-00156-KFW |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kevin M. McCusker, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been a Special Agent of the Federal Bureau of Investigation ("FBI") since February 2004. Since August 2020, I have been assigned to the Boston Field Office's Portland, Maine, Resident Agency, where I conduct investigations primarily involving complex financial crimes and related violations of federal law, including wire fraud, bank fraud, and money laundering. Prior to being assigned to the Portland, Maine, Resident Agency, I was assigned for nine years to an Economic Crimes Squad in the FBI's Boston Field Office, conducting similar investigations.

2. Before joining the FBI, I was a Certified Public Accountant, conducting audits and examinations of companies in the financial service industry.

3. I have participated in the execution of numerous search, seizure, and arrest warrants related to criminal investigations.

4. The facts in this affidavit come from subject and witness interviews, review of information provided to me by other agents and law enforcement officers, and my training and experience.

1

5. I make this affidavit in support of a criminal complaint charging Jake Namjik Cho with one count of abusive sexual contact within the special aircraft jurisdiction of the United States, in violation of Title 49, United States Code, Section 46506(1) and Title 18, United States Code, Section 2244(b).

## STATUTORY AUTHORITY

6. Section 46506 of Title 49 makes it a federal offense to commit certain enumerated crimes on an aircraft within the special aircraft jurisdiction of the United States. The "special aircraft jurisdiction of the United States" is defined in 49 U.S.C. § 46501(2) to include civil aircrafts in flight. An aircraft is considered to be "in flight" from the moment when all external doors are closed following boarding until the moment when one external door is opened to allow passengers to disembark. 49 U.S.C. § 46501(1)(A).

7. Sexual assault offenses codified in Chapter 109A of Title 18 are among the enumerated offenses listed in 49 U.S.C. § 46506. Section 2244(b) of Title 18 makes it a crime to knowingly engage in "sexual contact" with another person without that person's permission. "Sexual contact" is defined in 18 U.S.C. § 2246(3) to include the "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

## SHOWING OF PROBABLE CAUSE

### Background

8. On about March 19, 2023, the Portland Maine Resident Agency of the Federal Bureau of Investigation became aware of an allegation of sexual assault

2

occurring aboard Delta Airlines Flight 2138 the evening of March 17, 2023. The flight departed from Atlanta, Georgia and arrived at the Portland International Jetport, Portland Maine. Shortly after this flight arrived in Portland, Maine, a female victim (Victim 1) reported the assault to the Portland Police. In summary, Victim 1 reported that a male passenger seated next to her on the flight had continuously leaned into her seat area throughout the flight while appearing to be asleep. The male moved his hand onto the seat in the space between him and Victim 1, with his hand in contact with her thigh and buttocks. The male also moved his feet into Victim 1's foot space and touched her feet with his feet. Victim 1 reported that around a point in the flight when the aircraft encountered turbulence, the male passenger appeared to have spasmed and reached over Victim 1's leg and down into her crotch. The male passenger then touched the outside of the Victim 1's genitals from the outside of her pants. Victim 1 reported that prior to this, she had shifted her body to the side furthest away from the male passenger prior to the male reaching over her, which would have required the male's movement be deliberate. Victim 1 then exclaimed, "Excuse me," and the male passenger immediately retracted his hand. The male passenger appeared to be sleeping or pretending to sleep throughout and did not touch Victim 1 after retracting his hand. The male passenger stood up from his seat as soon as the flight crew allowed passengers to do so upon reaching the gate in Portland. He then moved away from Victim 1. Victim 1 described the passenger in part as an Asian male, between 40 and 50 years old, with glasses.

8. Further investigation by Portland Police following Victim 1's report identified the male passenger seated next to Victim 1 as Jake Cho.

### Initial Interview of Jake Cho

9.      On March 19, 2023, your affiant, along with a Federal Air Marshal and a Portland Police Officer, interviewed Cho at the Portland International Jetport before his scheduled return flight to Atlanta, Georgia. Cho was informed he was not under arrest and that his participation in the interview was voluntary. Cho told us that he is a doctor living in Peachtree City, Georgia, and working in Fayetteville, Georgia. He told us that he had travelled to Maine to propose to his girlfriend, who resides in Maine. Cho described what he had observed and heard during the flight and recalled sitting beside a female passenger. Cho told us that he did not speak with this female and denied touching her with his hand at all, inappropriately or otherwise. Cho also denied touching her feet with his feet, and denied that the female said, "Excuse me," or anything to Cho. Cho said that he was willing to take a polygraph examination concerning the statements made during his interview.

10.     Your affiant informed Cho that it is a violation of federal law to lie to law enforcement during the interview. Cho advised he had not lied during the interview.

### Review Of Records from Delta Airlines

11.     Your affiant obtained and reviewed records from Delta Airlines concerning Delta flight 2138 on March 17, 2023. The records reflect that the flight's scheduled departure time from Atlanta, Georgia was 9:20PM and scheduled arrival time in Portland, Maine was 11:59PM. The records also reflect that Victim 1 and Cho were assigned seats 17A and 17B, respectively.

## Interview of Jake Cho Following Polygraph Examination

12.     On April 1, 2023, Cho reported to the FBI's Resident Agency Office located in Portland, Maine, where he was interviewed again by your affiant and the same Federal Air Marshal. Cho was informed again that his participation in the interview was voluntary. During the interview, Cho was asked again if he would participate in a polygraph examination, to which he agreed. Cho was then introduced to an FBI Special Agent Polygrapher present in a nearby interview room. Cho was provided standard Miranda warnings orally and in writing, which he listened to, read himself and waived. Cho also consented to be interviewed in connection with the polygraph. The Special Agent Polygrapher interviewed Cho prior to administering the polygraph examination, during when Cho again denied assaulting the female passenger, indicating that she had made up the story. The Special Agent Polygrapher thereafter administered a polygraph examination of Cho.

13.     During a post-polygraph interview with the Special Agent Polygrapher, Cho initially continued to deny that he touched Victim 1. Eventually, while maintaining that the actions were not sexual, Cho admitted that he touched Victim 1 during the flight. At the end of the post-polygraph interview, Cho voluntarily signed a typewritten statement that documented Cho's recollections of what happened during the flight. The written statement reads in pertinent part:

> *"When we got in the air, I began to relax and I stretched out my legs. At some point, I touched my left foot against her right foot and maintained the contact until I fell asleep. In addition to maintaining the foot contact, I used the contact to keep myself upright as I have shorter legs. I feel (sic) asleep shortly thereafter. When I woke up I was leaning on my left, facing her. At some point*

*I saw her and reached out and grabbed her right upper thigh with my left hand. I intended to only squeeze her upper right thigh and never intended to touch her crotch. Because my glasses were off and it was dark, my hand slipped from her upper thigh to her crotch. As soon as I did this, she instantly exclaimed something loudly which caused me to remove my hand from her leg and sit straight up. I was so embarrassed and did not know what to do so I closed my eyes and tried to go back to sleep for the remainder of the flight."*

14. Within the written statement, Cho expressed regret for any harm he may have caused Victim 1.

## CONCLUSION

15. Based on the facts described above, I respectfully submit that there is probable cause to believe that on about March 17, 2023, Jake Namjik Cho knowingly engaged in abusive sexual contact with another person (Victim 1) without that person's permission during the course of a commercial flight from Atlanta, Georgia to Portland, Maine, all in violation of 49 U.S.C. § 46506(1) and 18 U.S.C. § 2244(b).

Kevin M. McCusker
Special Agent, FBI

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: May 26 2023

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title

6